# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00224-FDW

| | |
|---|---|
| COREY DELON GREENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KENNETH LASSITER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint. [Doc. 16].

## I.     BACKGROUND

Pro se Plaintiff Corey Delon Greene ("Plaintiff") is a state inmate currently incarcerated at Avery/Mitchell Correctional Institution in Spruce Pine, North Carolina. Plaintiff filed this action on July 18, 2019 [Doc. 1], pursuant to 42 U.S.C. § 1983, and filed an Amended Complaint on September 12, 2019. [Doc. 16]. Plaintiff names the following individuals as Defendants in his Amended Complaint: (1) Tim Moose, identified as the Chief Deputy Secretary of the North Carolina Department of Public Safety (NCDPS); (2) Todd Ishee, identified as the Commissioner of Prisons; (3) Kenneth Lassiter, identified as the Director of Prisons; (4) Sarah Cobb, identified as the Deputy Director of Prisons; (5) Chris Rich, identified as the SRG Coordinator; and (6) Betty Brown, identified as the Director of Chaplaincy Services. [Doc. 1 at 3-4, 13].

Plaintiff alleges that Defendants violated his First Amendment right to the free exercise of his religion and his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., by refusing to recognize the 5% Nation of Gods and

Earths ("NOG") as an approved religious group. Plaintiff is a member of this faith group and alleges that his request to be allowed "to worship God as 5%ers in the NCDPS" have been denied without serious inquiry and based on unclear grounds. [Doc. 1 at 15]. Plaintiff also claims that he was validated as a security risk group (SRG) member for simply having NOG material because the NCDPS views NOG members as "the same as the blood gang members." [Id. at 17]. Plaintiff alleges that this denial of his faith has substantially burdened him and that classifying NOG as "a SRG for over 20 years is not the least restrictive means of furthering the NCDPS interest." [Id. at 18]. Plaintiff also alleges that other faiths with tenets similar to those of NOG are allowed to practice their religion. Finally, Plaintiff contends that Defendant Lassiter has failed to consistently uphold NOG-related policy. [Id.].

For relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. [Doc. 16 at 19-20].

## II. STANDARD OF REVIEW

The Court must review Plaintiff's Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as

fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and

alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological

4

interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's First Amendment and RLUIPA claims are not clearly frivolous and therefore survive initial review. See Coward v. Robinson, 276 F.Supp.3d 544 (E.D. Va. Aug. 28, 2017) (holding the Virginia Department of Corrections violated plaintiff's rights under RLUIPA and the First Amendment by designating NOG as a security threat group and by refusing to recognize the NOG as a religion).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's claims are not clearly frivolous and therefore survive initial review.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's action survives initial review under 28 U.S.C. § 1915(e).
2. Local Rule 4.3 sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall

5

commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants, who are alleged to be current or former employees of NCDPS.

Signed: February 3, 2020

Frank D. Whitney
Chief United States District Judge