# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00224-MR

| | |
|---|---|
| COREY DELON GREENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| KENNETH LASSITER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, [Doc. 69]; Plaintiff's "Request to File Declaration in Support of Summary Judgment Response," [Doc. 78]; Plaintiff's "56(f) and/or (e) Requesting more time for Discovery – Responding to Summary Judgment," [Doc. 79]; and Plaintiff's Motion for Appointment of Counsel, [Doc. 82].

**I. PROCEDURAL BACKGROUND**

Pro se Plaintiff Corey Delon Greene ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. He filed this action on July 18, 2019 pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 US.C. § 2000cc-1, while he was incarcerated at Avery/Mitchell Correctional Institution ("AMCI") in Spruce Pine, North Carolina. [Doc. 1]. Plaintiff names the following Defendants: (1) Tim Moose, identified as the Chief Deputy Secretary of the North Carolina Department of Public Safety (NCDPS); (2) Todd Ishee, identified as the Commissioner of Prisons; (3) Kenneth Lassiter identified as the Director of Prisons; (4) Sarah Cobb, identified as the Deputy Director of Prisons; (5) Betty Brown, identified as the Director of Chaplaincy Services; and (6) Chris Rich, identified as the Security Risk Group ("SRG") Coordinator. [Id. at 2-4]. It appears that Plaintiff sought to sue the Defendants in their individual and official capacities.[1] [See id. at 2-3, 13].

In his original verified Complaint, Plaintiff alleged that his rights under the RLUIPA and First Amendment were violated by the following: (1) Defendant Brown's failure "to recognize the Nation of Gods and Earth ["NGE"] as a Religion;" (2) Defendant Browns' denial of his requests for religious assistance in worshiping God as a member of the NGE without honest inquiry into the religion and while allowing other faiths with similar tenets to practice; (3) Defendant Lassiter imposition of a substantial burden

---

[1] Plaintiff explicitly names Defendants Moose, Ishee, Lassiter, and Cobb in "both capacities," [Doc. 1 at 2-3], and does not specify the capacity or capacities in which he seeks to sue Defendants Brown and Rich, [Id. at 13].

on Plaintiff by denying his religion; (4) Defendant Rich's classification of the NGE as an SRG for over 20 years because it is not the least restrictive means of furthering NCDPS' interests; and (5) Defendant Lassiter's failure to consistently apply policies regarding NGE materials. [Id. at 16]. Plaintiff made no allegations against or claims particular to Defendants Moose, Ishee, or Cobb. [See id.].

For relief, Plaintiff seeks an injunction requiring the NCDPS to allow the NGE "to practice as any other religion (i.e.) to have Holy days, festivals diets etc." [Doc. 1 at 17]. Plaintiff also seeks declaratory relief and punitive damages, as well as compensatory damages for the "loss of limited religious liberty enjoyed by other prisoners" due to Plaintiff's SRG status, which has resulted in his limitation to two phone calls per month and visitation with only immediate family and only behind a glass window, review of his non-legal mail by staff, and random cell searches. [Id. at 17-18].

On September 12, 2019, Plaintiff filed an Amended Complaint, which made only minor corrections to his original Complaint and maintained the same claims, including that the NGE is a religion. [See Doc. 16]. Plaintiff's first Amended Complaint survived initial review and he proceeded on his First Amendment and RLUIPA claims. [Id.]. Then, on February 24, 2020, Plaintiff moved to amend his complaint again and submitted a proposed, verified

3

Second Amended Complaint. [Doc. 25]. Plaintiff asked to substitute the word "culture" for "religion" and to "stipulate[e] that the Nation of Gods and Earths is a God centered culture," not a religion, and that this is a "central tenet" of the NGE. [Id.]. The Court granted Plaintiff's motion to amend. [Doc. 27]. Finally, on September 17, 2020, Plaintiff moved to amend his complaint a third time, which the Court allowed. [Docs. 53, 54]. In his verified Third Amended Complaint, Plaintiff sought only to correct the name of a fellow inmate he had previously referenced. [See Doc. 55].

On May 17, 2021, Defendants moved for summary judgment. [Doc. 69]. In support of their motion, Defendants submitted a memorandum and their verified discovery responses in this matter.[2] [Docs. 69-1, 70, 70-1 to 70-2]. The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the deadline and requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 74]. Plaintiff timely responded to Defendants' summary judgment motion. [Doc. 76]. Plaintiff submitted a memorandum; an Affidavit of Larry Dunston, an SRG expert for the NCDPS, in the matter of Miles v. Guice, No. 5:13-CT-

---

[2] The discovery responses are verified only by Defendants Brown, Rich, and Cobb and not by Defendants Lassiter, Ishee, or Moose. [See Doc. 70-1 at 25-27].

03193-FL in the Eastern District of North Carolina; Plaintiff's prison infractions record; the Declaration of Kwame Hollaway; and case law. [Docs. 76, 76-3, 76-4]. Plaintiff, however, did not submit his own sworn testimony. Nonetheless, the allegations made in Plaintiff's sworn complaints made on his personal knowledge are to be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding that verified prisoner complaints should be considered as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

In September 2021, approximately three months after Plaintiff's summary judgment response deadline, Plaintiff filed two motions through which he seeks, out of time, to submit additional evidence for the Court's consideration here. [Docs. 78, 79; see Doc. 80, 80-1]. This evidence includes Plaintiff's Affidavit, [Doc. 78 at 2-7], which Plaintiff states is necessary "to envince [*sic*] the character" of the previously submitted case law, [id. at 1], and letters from "Master 'Shamar' Significant," Plaintiff's "beloved brother who writes to any who want correspondence from [the Allah School in Mecca]," [Doc. 80 at 1; Doc. 80-1], "to cure the possible fatal defect of his summary judgment response," [Doc. 79 at 2]. As grounds for more time, Plaintiff states that he was initially confused by documents produced

5

Case 1:19-cv-00224-MR   Document 83   Filed 01/05/22   Page 5 of 16

by Defendants in discovery and that "everything was cleared" with only a "small window to file summary judgment." [Id.]. Plaintiff argues that "[u]nder warning of judicial economy," he did not request another extension of the deadline. [Id.]. Instead, Plaintiff choose to wait nearly three months past his response deadline to submit this evidence. Plaintiff does not explain why he was unable to present the evidence in his response, given the additional three weeks between the dispositive motions' deadline and his response deadline. Because Plaintiff could have timely submitted these materials with his summary judgment response and because they do not change the outcome of these proceedings in any event, the Court will deny Plaintiff's motions to submit this evidence out of time.

This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to the Plaintiff is as follows.

Plaintiff is a prisoner of the State of North Carolina currently serving a life sentence. [Doc. 70-2 at 281]. Plaintiff was first validated as an NGE member in 1998. According to Plaintiff's own evidence, the NGE consist mostly of Islamic inmates who are affiliated with the Bloods of the United Blood Nation gang. [Doc. 76-4 at ¶ 6: Dunston Aff.]. The NGE and the UBN members share the same violent propensities in prison because they are essentially the same group of inmates. [Id. at ¶ 7]. The NGE arose out of

8

the Nation of Islam and shares many of its beliefs. [Id. at ¶ 17]. The NCDPS considers the NGE[3] to be an SRG. [Doc. 70-2 at 263].

Plaintiff worked his way down the security levels and his SRG status was vacated in January 2002. Then in June 2002, while housed at Brown Creek Correctional Institution, Plaintiff was again validated as a member of the NGE based on the use or possession of gang-related symbols and membership documents. He was validated at level three, the highest level, at that time due to his history of disruptive behavior. [Doc. 70-1 at 12-13]. It appears that Plaintiff retained SRG status through the times relevant here and has been at level three for at least the previous several years. SRG levels are based on the threat an inmate poses to institutional security, typically determined by infraction history. Level three inmates, including the Plaintiff, can reduce their SRG level by attending the Security Threat Group Management Unit (STGMU) program. [Id. at 13-14; see Doc. 70-2 at 270].

In August 2017, while housed at AMCI, Plaintiff learned that another inmate, Kwame Hollaway, was allowed NGE material after Hollaway submitted a grievance when his materials had been confiscated. [Doc. 1 at 15]. In June 2018, Plaintiff filed a Form DC-572 Request for Religious

---

[3] The NGE are also known as the Five Percent Nation, Five Percenters, and 5%ers. For the sake of uniformity, the Court will refer to this group as the NGE.

9

Assistance to Defendant Betty Brown, the Chaplaincy Services Director, requesting that the NGE be allowed to worship God as the NGE in the NCDPS. [Id. at 14]. Specifically, Plaintiff requested that the NGE "be given a place of congregation." [Doc. 70-2 at 224]. Plaintiff explained that the NGE believe that "[b]lack people are the original people of the planet Earth." [Id.]. On the form, Plaintiff was asked to state: "the practices that are essential to your religion and the materials/items that are essential to those practices, and, identify for each the religious authority, law or teaching that mandates or encourages the practice or item" and directed to "[u]se additional pages if necessary." [Id.]. In response, Plaintiff stated only that the "fundamental lessons" of NGE are found in "Life 120°." [Id.].

Plaintiff's request was denied a month or two later. [Doc. 1 at 14; see Doc. 70-2 at 264]. In denying Plaintiff's request, Defendant Brown advised Plaintiff that the NCDPS considers the NGE to be an SRG and that the Religious Practices Committee, therefore, could not support Plaintiff's request. [Doc. 70-2 at 263]. Defendant Brown also advised Plaintiff that AMCI would accommodate Plaintiff's faith through publications Plaintiff may purchase, but that "any books ordered must be preapproved and within the publication policy guidelines." [Id. at 264]. On January 15, 2019, after learning more information from Chaplain Griffin, Plaintiff filed a second,

similar request. [Doc. 1 at 14]. Plaintiff's second request was denied for the same reasons as his first. [Id.; see Docs. 70-2 at 263-64].

In this action, Plaintiff initially claimed that NGE is a religion, but later amended his Complaint to specifically allege that NGE is not a religion, but rather a "God centered culture."[4] [Doc. 55 at 7]. Plaintiff continues to maintain that NGE is his "culture – way of life." [Doc. 76 at 5; Docs. 53, 55].

## IV. DISCUSSION

RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are

---

[4] The Court considers Plaintiff's allegation that NGE is a culture, and not a religion, as a judicial admission for summary judgment purposes. Under the rule of judicial admission, "a party is bound by the admissions of his pleadings." Lucas v. Burnley, 879 F.2d 1240, 1242 (4th Cir. 1989). A judicial admission is a "representation that is 'conclusive in the case'" such as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 347 (4th Cir. 2014) (citing Meyer v. Berkshire Life Inc. Co., 372 F.3d 261, 264 (4th Cir. 2004)).

therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

"The protections of § 2000cc-1(a) apply whenever a 'substantial burden is imposed in a program or activity that receives Federal financial assistance' or whenever a 'substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or within Indian tribes." Rendleman v. Rouse, 569 F.3d 182, 186 569 (4th Cir. 2009) (quoting 42 U.S.C. § 2000c-1(b)(1), (2)).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his sincerely held religious beliefs. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009).

A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [ ] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of

the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[ ] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth

Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To sustain a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Here, as to RLUIPA, Plaintiff has not shown that AMCI receives Federal financial assistance such that the protections of the RLUIPA apply in the first place. More importantly, however, the forecast of evidence plainly defeat both Plaintiff's claims. To show entitlement to relief under RLUIPA or the First Amendment, Plaintiff must show that he maintains a sincerely held religious belief. Plaintiff initially based his claims on the premise that the NGE is a religion and that his rights were violated because Defendant Brown

refused to allow Plaintiff to worship God[5] as an NGE.  Plaintiff, however, amended his Complaint solely to allege and stipulate the "central tenet" that NGE is a culture and not a religion.  As noted, the Court considers this allegation as a judicial admission for summary judgment purposes.[6]  Without a forecast of evidence of a sincerely held religious belief in the first place, there is no genuine issue for trial. The Court, therefore, will grant Defendants' motion for summary judgment.

## V. CONCLUSION

For all the foregoing reasons, the Court will grant Defendants' motion for summary judgment and dismiss this action with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 69] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motions [Docs. 78, 79, 82] are **DENIED**.

The Clerk is respectfully instructed to terminate this action.

---

[5] It is well-accepted that NGE adherents believe that every black man is his own god.  See Coward v. Robinson, 276 F.Supp.3d 544, 551 (E.D. Va. Aug. 28, 2017).

[6] Moreover, such a statement is also admissible at trial as an admission of a party opponent under Federal Rule of Evidence 801(d)(1).

15

**IT IS SO ORDERED**.

Signed: January 5, 2022

Martin Reidinger
Chief United States District Judge