# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:19-cv-00224-MR

| | |
|---|---|
| COREY DELON GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   <u>**MEMORANDUM OF**</u> |
| | )   <u>**DECISION AND ORDER**</u> |
| | ) |
| KENNETH LASSITER, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** comes before the Court on Defendants' Renewed Motion for Summary Judgment [Doc. 127] and Plaintiff's unauthorized Surreplies [Docs. 144, 145].

## I.  PROCEDURAL BACKGROUND

Pro se Plaintiff Corey Delon Greene ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at the New Hanover Correctional Center in Wilmington, North Carolina.  On or about July 17, 2019, Plaintiff filed this action by verified Complaint pursuant to 42 U.S.C. § 1983 against Defendants Kenneth Lassiter, Tim Moose, Todd Ishee, Sarah Cobb, Betty Brown, and Chris Rich claiming that his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, were violated while he was incarcerated

at Avery/Mitchell Correctional Institution ("AMCI") in Spruce Pine, North Carolina, because Defendants have refused to recognize the Nation of Gods and Earths ("NGE") as a religion and have classified NGE-adherents, known as Five Percenters, as a Security Risk Group[1] (SRG) for over 20 years.  [Doc. 1; Doc. 1-3 (postmark)].

Plaintiff alleges that (1) Defendant Brown, the North Carolina Department of Public Safety (NCDPS)[2] Director of Chaplaincy Services, failed to recognize NGE as a religion and denied Plaintiff's requests for religious assistance as a Five Percenter without serious inquiry into the religion and while allowing other faiths with similar tenets to practice; (2) Defendant Lassiter, the Director of Prisons, imposed a substantial burden on Plaintiff by denying his religion and failed to consistently apply policies regarding NGE materials; and (3) Defendant Rich, the SRG Coordinator, allowed the NGE's SRG designation to continue unchecked despite such classification not being the least restrictive means of furthering the interests

---

[1] The terms "Security Risk Group" and "Security Threat Group" (STG) are used interchangeably in the record.

[2] The relevant arm of the NCDPS is now known as the North Carolina Department of Adult Correction (NCDAC).  For the sake of uniformity with the forecast of evidence, however, the Court will refer to this entity as the NCDPS.

of the NCDPS.[3]  [Id. at 16].  With his Complaint, Plaintiff also submitted grievance records and inmate request forms regarding his requests to practice as a Five Percenter and to be removed from SRG status.  [Doc. 1-1].

Before the Court conducted initial review of Plaintiff's Complaint, Plaintiff filed an unverified Amended Complaint, making only minor corrections to his original Complaint and maintaining the same claims, including that the NGE is a religion.  [See Doc. 16].  Plaintiff again made no allegations specific to Defendants Moose, Ishee, or Cobb.  [See id. at 18-19].  Plaintiff's Amended Complaint survived initial review as not clearly frivolous, and he proceeded on his First Amendment and RLUIPA claims.  [Doc. 18].

On February 24, 2020, Plaintiff moved to amend his Complaint again and submitted a proposed, verified Second Amended Complaint.  [Doc. 25].  Plaintiff asked to substitute the word "culture" for "religion" and to "stipulate[e] that the Nation of Gods and Earths is a God centered culture," not a religion, and that this is a "central tenet" of the NGE.  [Id.].  The Court granted Plaintiff's motion to amend.  [Doc. 27].  Then, on September 17, 2020,

_____

[3] Other than use of "et al" in his allegations against Brown, Rich, and Lassiter, Plaintiff made no allegations against or claims particular to Defendants Moose, Ishee, or Cobb. [See Doc. 1 at 16-17].

3

Plaintiff moved to amend his Complaint a third time to correct the name of a fellow inmate he had previously referenced, Kwame Hollway, which the Court allowed. [Docs. 53, 54, 55]. Plaintiff seeks an injunction allowing the NGE "to practice as their culture requires (ie) to have holy days festivals diets etc" and monetary relief, including punitive damages, for liberties lost due to his SRG status.[4] [Doc. 55 at 9-10].

On May 17, 2021, Defendants moved for summary judgment. [Doc. 69]. In support of their motion, Defendants submitted a memorandum and their verified discovery responses in this matter.[5] These responses included copies of various NCDPS policies, including the Religious Practices Operational Manual ("Religious Practices Manual") that issued on July 26, 2019. [Docs. 69-1, 70, 70-1 to 70-2]. The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the deadline and requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 74]. Plaintiff timely responded to Defendants' summary judgment motion. [Doc. 76]. Plaintiff submitted a memorandum;

---

[4] As addressed below, during the pendency of this action, the NCDPS changed its position to recognize the NGE as a religion.

[5] The discovery responses are verified by Defendants Brown, Rich, and Cobb, but not by Defendants Lassiter, Ishee, or Moose. [See Doc. 70-1 at 25-27].

4

an Affidavit of Larry Dunston, who served as an SRG expert for the NCDPS in the matter of Miles v. Guice, No. 5:13-CT-03193-FL (E.D.N.C.); Plaintiff's prison infractions record; the Declaration of fellow prisoner Kwame Hollaway; and a copy of Coward v. Robinson, 276 F.Supp.3d 544 (E.D. Va. 2017). [Docs. 76, 76-3, 76-4].

On January 5, 2022, the Court granted summary judgment for Defendants based in part on Plaintiff's sworn allegation that NGE is a culture, not a religion.[6] [See Doc. 83 at 3-4, 14-16]. After the Court denied Plaintiff's motion for reconsideration, Plaintiff appealed. [Docs. 89, 90]. The Court of Appeals for the Fourth Circuit vacated the Court's entry of summary judgment and remanded for further proceedings. Greene v. Lassiter, No. 22-6273, 2023 WL 8618519 (4th Cir. Dec. 13, 2023). The Fourth Circuit held that this Court erred in concluding that Plaintiff's sworn allegation "that NGE 'is a God centered culture' that must not be 'misconstrued as religion'" was a "relief-foreclosing judicial admission" under RLUIPA and the First Amendment. Id. at *1. The Fourth Circuit concluded, therefore, that "there may be at least an open factual question about whether NGE qualifies as a

---

[6] The Court also found, as to Plaintiff's RLUIPA claim, that he failed to show that AMCI receives federal financial assistance "such that the protections of the RLUIPA apply in the first place." [Doc. 83 at 14]. The Court of Appeals did not address this alternate basis for summary judgment in its decision.

religion for RLUIPA and First Amendment purposes."  Id.

Prior to the remand, the NCDPS changed its position to recognize NGE as a religion.  [Doc. 101 at 5].

On Defendants' motion, the Court stayed this matter on remand pending the appeal in Rogers v. N. Carolina Dep't Pub. Safety, No. 1:19CV417, 2022 WL 3283990 (M.D.N.C. Aug. 11, 2022).[7]  In moving to stay, Defendants argued that Plaintiff would not be prejudiced by the stay in light of the recognition of NGE as a religion.  [Doc. 101 at 5].  After the Fourth Circuit's decision in Rogers issued, the Court lifted the stay and allowed the parties to supplement the summary judgment record in this matter with additional arguments and materials.[8]  [Doc. 111].  After two extensions of this deadline, rather than supplement their summary judgment materials, Defendants filed a renewed motion for summary judgment.  [Doc. 127].  In

---

[7] In Rogers, the prisoner plaintiff claimed Betty Brown and Chris Rich (Defendants herein), among others, violated his rights under the RLUIPA and the First and Fourteenth Amendments based on the alleged denial of his right to practice Nation of Islam and his NGE-based SRG status.  Rogers v. N. Carolina Dep't Pub. Safety, 2022 WL 3283990, report and recommendation adopted, No. 1:19CV417, 2022 WL 4472958 (M.D.N.C. Sept. 26, 2022), affirmed, Rogers v. Rich, No. 22-7167, 2024 WL 1230147 (4th Cir. Mar. 22, 2024).  On March 22, 2024, the Fourth Circuit dismissed Plaintiff's appeal from the dismissal of the action on summary judgment because the plaintiff failed to meaningfully challenge the district court's conclusion that the prison policies at issue were the least restrictive means of furthering a compelling government interest.  2024 WL 1230147, at *1.

[8] The Court ordered Defendants to supplement their materials first and that Plaintiff had 30 days from Defendants' supplement to file a response.  [Doc. 111 at 4].

support of their renewed motion, Defendants submit only a brief and the new section in the Religious Practices Manual regarding the Nation of Gods and Earths. [Docs. 128, 128-1].

As grounds for summary judgment, Defendants argue that 1) Plaintiff's First Amendment and RLUIPA claims are unsupported by the forecast of evidence, 2) that they are entitled to qualified immunity, 3) that the claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment, 4) that Plaintiff's RLUIPA claim is moot because Defendants now recognize NGE as a religion, and 5) that Plaintiff failed to establish that any individual Defendant had the requisite intent to deprive Plaintiff of his RLUIPA rights. [Doc. 128].

After the Court extended Plaintiff's deadline to respond, partially granted Plaintiff's motion to reopen discovery, and ordered Defendants to supplement a previous discovery response, Plaintiff filed his response to Defendants' renewed motion. [Docs. 130, 131, 138; 7/22/2024 Text Order]. Plaintiff submits a memorandum; two Affidavits of the Plaintiff himself; the Affidavits of Dwayne Mays, a fellow inmate and NGE adherent; Damion Butler, a Sufi Muslim who has studied with the Plaintiff; and Donald Palmer, the Chief Executive Officer for the National Office of Cultural Affairs

(NOCA);[9] Plaintiff's handwritten copy of a 1998 speech by Dumar Wa'de Allah called "We are Not a Gang;" and various records and correspondence from early 2022 regarding Plaintiff's renewed attempts to practice NGE in prison.[10]  [Docs. 138, 138-1 through 138-14].  Plaintiff also filed an Addendum to his Response.  [Doc. 143].  Defendants replied.  [Doc. 142]. Notably, in their Reply, Defendants concede that "the Fourth Circuit has established [that the NGE is a religion] for Plaintiff in this case," [id. at 2], even though the Court of Appeals did not articulate such in its holding.  This Court, however, takes this statement by Defendants as a concession and judicial admission that NGE is a religion, and will address the other grounds presented on the present motion.[11]  Plaintiff filed two unauthorized surreplies [Docs. 144, 145], which the Court will strike.

This matter is now ripe for disposition.

---

[9] The NOCA, the NGE's professional office, publishes and distributes NGE lessons and other foundational works.

[10] The allegations in Plaintiff's Complaint and Second and Third Amended Complaints, which were all verified, made on his personal knowledge are also considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding that verified prisoner complaints should be considered as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

[11] Defendants argue that the Plaintiff's RLUIPA claim is moot because of this concession. Since the Court disposes of this claim on other grounds, the mootness issue need not be addressed.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

9

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000).  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

### III.  FACTUAL BACKGROUND

The relevant forecast of evidence, which includes the original and supplemented summary judgment records, viewed in the light most favorable to the Plaintiff is as follows.

The NGE was founded in 1964 by Clarence 13X, also known as "The Father," when he left the Nation of Islam (NOI) because he disagreed with the idea of worshipping another person, Master Fard Muhammad, the founder of the NOI. [Doc. 138-4 at ¶ 2: Pltf. Aff. I]. Aimed primarily at inner-city youth, Clarence 13X taught that each individual was "God" and emphasized the "knowledge of self" that was "gained through building (utilizing knowledge & growing)." [Id. at ¶ 4]. The NGE teaches that the Asiatic Black Man is the Original Man and that men are "Gods" and women are "Earths." [Doc. 138-5 at 4; Doc. 76-4 at ¶ 15]. White men are considered the "devil," although perhaps not irredeemably so. [Doc. 76-4 at 5; Doc. 138-5 at 5].

There are several foundational lessons in the NGE, including 120°, Mathematics, Alphabets, 12 Jewels, and the 5% Anthem. [Doc. 138-4 at ¶ 5]. With these lessons and literature, NGE members "can build reality to gain insight with self and the world around them." [Id. at ¶ 6]. The 120° consists of lessons, or "degrees," which prompt NGE to look at the past, present, and future to get perspective. [Id. at ¶ 10]. By constantly being active mentally and physically, members "can eliminate the clouds of deception around them," which is symbolized at the center of the circle of the NGE flag. [Id. at ¶ 7]. The essential tenets of NGE are to constantly build, never accept

defeat, and to strive toward perfection. [Id. at ¶ 8]. In this regard, NGE members are "always seeking to better himself or herself." [Id. at ¶ 7]. The NGE practice several days of fasting during the year, including on February 22 ("The Fathers Born day"), June 13 ("Show's Prove day"), the last Saturday in August ("Annual Family Day"), and October 11 ("Birthday of the Nation of Gods and Earths"). [Id. at ¶ 12].

Plaintiff is a prisoner of the State of North Carolina. He has been serving a life sentence since his first-degree murder conviction in May 1993 at the age of 19. [See Doc. 70-2 at 281]. Plaintiff was introduced to the NGE around this time, and he has been a Five Percenter in the NGE since 1994, when he became known as "Scientific Conscious Self Rule Allah." [Doc. 138-4 at ¶¶ 1-2].

Defendant Lassiter began working for the NCDPS in 1989 as a Correctional Officer. [Doc. 70-1 at 5]. From May 2017 to his retirement in or around December 2019, Defendant Lassiter was the Director of Prisons.[12] [Id.]. Defendant Ishee was hired as the Commissioner of Prisons in June 2019. He remains in that position. [Id.]. At the time Plaintiff filed his Complaint, Defendant Moose was the Chief Deputy Secretary of the

---

[12] Following Defendant Lassiter's retirement, Defendant Ishee, as Commissioner of Prisons, announced a new organizational structure omitting the Director of Prisons position.

NCDPS.  [Doc. 1 at 2].  Defendant Cobb began working for the NCDPS in 1993 as a Correctional Officer.  [Doc. 70-1 at 4].  From June 2018 to March 2019, she was the Assistant Director of Reentry, Programs & Services.  [Id.].  In March 2019, she was promoted to Deputy Director of Auxiliary Services for Prisons.  Her title later changed to Director of Rehabilitative Services.  [Doc. 70-1 at 5].

Defendant Rich was first employed with the NCDPS in 2004 as a Corrections Officer at Marion Correctional Institution ("Marion CI") in Marion, North Carolina.  [Id.].  He later became the SRG Officer for Marion CI.  In 2008, he became a probation officer in Buncombe County, North Carolina.  Then, in 2014, he returned to the NCDPS as a Criminal Analyst with the Special Operations and Intelligence Unit.  [Id.].  At the time of Plaintiff's Complaint in 2019, Defendant Rich was the NCDPS SRG Coordinator and "directly in the chain of command for the validation process."  [Doc. 1 at 13; Doc. 70-1 at 3].  Although the forecast of evidence does not show whether Defendant Rich remains in that position now, in April 2021, he was assisting in overseeing the validation of new SRG groups for the Juvenile Justice division of the NCDPS.  [Doc. 70-1 at 5].  However, Defendants Lassiter, Moose, Ishee, Cobb, and Brown have not been at any relevant time responsible for the designation of SRGs.  [Id. at 6].

Defendant Brown, as Chaplaincy Services Director, was charged with administering the NCDPS Religious Services Program.  [Doc. 70-2 at 12].  Her duties included determining standards for religious services programs, determining components and procedures for religious programming throughout the NCDPS, providing guidance to facilities in the interpretation of and compliance with religious policy and administrative procedure and in the development and management of religious services programs and staff, and serving as a consultant on religious beliefs and practices.  [Id.].  The Chaplaincy Services Director is also tasked with preparing and updating the Religious Practices Manual.  [Id.].  The Religious Practices Manual that issued on July 26, 2019 was signed by Defendants Lassiter, Brown, and Cobb.  [Doc. 70-2 at 122].  In or around early 2022, Defendant Brown retired from the NCDPS and Susan Addams replaced her as Acting Chaplaincy Services Director.  [See Doc. 138-2 at 17, Doc. 138-12 at 1].

Validation of a group as an SRG in the NCDPS occurs as follows.  [See Doc. 70-1 at 10-11 (citing Security Manual Policy .1700[13])].  When there exists a potential threat from an inmate group, an Intelligence Officer prepares a formal threat assessment.  [Id. at 10].  The Intelligence Officer submits the formal threat assessment, including any supporting

_____

[13] This Policy does not appear in the forecast of evidence before the Court.

documentation, through the chain of command to the Chief of Security. The documentation should include any current and potential threatening activity. [Id.]. When recommending an SRG designation, the Chief of Security or designee should consider, at minimum: (1) the history and purpose of the group; (2) the organizational structure of the group; (3) the propensity for violence by the group or its individual members; (4) specific violent acts or intended acts of violence that can be reasonably attributed to the group; (5) demographics of the group including the size, location, patterns of growth or decline in group membership; (6) specific illegal or prohibited acts that can be attributed to the group; (7) the degree of threat to the community or facility security; and (8) whether special security initiatives are necessary because routine security measures are inadequate to address group-related safety and security concerns. [Id.]. When recommending that a group be validated as an SRG, the Chief of Security or designee submits a completed Security Threat Group Validation Assessment (DC-809) to the Director of Prisons for validation. [Id.]. After validation, the Chief of Security or designee reviews the validation annually to determine whether the SRG should remain validated. [Id. at 10-11].

In 1998, the NGE was the first group validated as an SRG in the North Carolina prison system. [Id. at 11; Doc. 138-5 at 3]. It was validated as an

SRG because of the number of assaults attributed to the group at that time. [Doc. 70-1 at 11]. The SRG status of the NGE completely prohibited its practice in North Carolina prisons, including the possession of any NGE materials by prisoners.[14] Moreover, prisoners were not allowed to practice the NGE on their own. [Doc. 138-2 at 16; Doc. 1 at 17]. For 24 years, the SRG status of the NGE was not reviewed, and as of the time Plaintiff filed this action Defendant Rich was responsible for allowing the NGE "to be continually labeled SRG." [Doc. 1 at 17; Doc. 138-2 at 16, 24; see id. at 11].

Validation of prisoners as members of an SRG begins with an investigation by the facility SRG Officer. [Doc. 70-1 at 12]. SRG Officers investigate whether a prisoner should be validated as an SRG member based on a defined list of criteria, including for instance law enforcement intelligence, self-admission, possession of documents, gang-related tattoos or markings, and possession of membership documents or gang-related publications. [Id.]. The SRG Officer finding at least two of these criteria sends their investigation to the facility head for approval. If the facility head

---

[14] Defendant Rich admits that designating a faith group as SRG prohibits its practice and the possession of its religious materials by prisoners. [Doc. 70-1 at 21]. Defendant Brown denies this characterization and Defendant Cobb asserts that NGE practice "[was] not fully prohibited, as individuals are often encouraged to maintain personal devotion as long as the devotion (material and actions) are not against policy and procedures maintaining orderly and safe operations." [Id.]. Defendant Cobb acknowledges, however, that "designation of a group as an SRG group can limit the possession of certain materials." [Id.].

approves the validation, it is sent to the Special Operations and Intelligence Unit for division level approval.  [Id.].

Plaintiff was first validated as SRG in 1998.  [Doc. 70-1 at 12-13]. Plaintiff's forecast of evidence shows that he remained on SRG status for 24 years until 2022 when the NCDPS first recognized NGE as a religion.[15]  [Doc. 138-2 at 11; Doc. 138-5 at 43].  Plaintiff, therefore, was prevented from practicing as a member of the NGE during this time. [Doc. 138-2 at 19].  From at least 2015, when the NCDPS changed data management systems, to 2022, Plaintiff was assessed annually and remained at SRG Level Three. [Doc. 70-1 at 13].  Level Three inmates may make only two phone calls a month, are allowed only non-contact visits with immediate family members, have their mail subject to monitoring, and may be searched more often.  [Id. at 14].  Eligible inmates can reduce their SRG level by attending the Security Threat Group Management Unit (STGMU) program.  [Id. at 13-14; see Doc. 70-2 at 270].  Plaintiff was eligible for the STGMU program.  [Id. at 13].

---

[15] Defendants' forecast of evidence, on the other hand, shows that Plaintiff was first validated in 1998, but that he worked his way down the security levels until his SRG status was vacated at a January 2002 review.  Defendants' forecast further shows that Plaintiff was again validated as SRG while he was incarcerated at Brown Creek Correctional Institution, on June 18, 2002, for the use or possession of gang-related symbols and possession of membership documents.  [Doc. 70-1 at 12-13].  At this time, he was validated at Level Three due to his history of disruptive behavior.  [Id. at 13].

In August 2017, while housed at AMCI, Plaintiff learned that another inmate, Kwame Hollaway, was allowed NGE material after Hollaway submitted a grievance when his materials had been confiscated. [Doc. 1 at 15]. An offender whose religion is not currently recognized by the NCDPS and wants the NCDPS to recognize his religion must submit a DC-572 Request for Religious Assistance form to the facility chaplain or other designated staff. [Doc. 70-1 at 6]. In completing the DC-572, the offender must provide an authoritative source of information for the requested religion or faith practice. [Id.]. The facility chaplain or designee has 30 days to assist the offender with the request. [Id. at 7]. This includes preparing a memorandum detailing the steps taken to assist the offender, which is sent to the Chaplaincy Services Director with the DC-572. [Id.]. The Religious Practices Committee (the "Committee") must evaluate the offender's request for religious accommodation within 120 days. The Committee conducts a subject matter review and researches the information provided. [Id.]. If the Committee recommends establishing a policy for a new religious or faith practice, the draft policy is sent through the normal chain of command for relief. Any legal review is documented. [Id.]. The offender is notified of the Committee's recommendation and the Chaplaincy Services Director maintains the DC-572 and the Committee's recommendation. [Id.].

18

On June 14, 2018, Plaintiff submitted a DC-572 to Defendant Brown, requesting that the NGE be allowed to worship God as the NGE in the NCDPS. [Doc. 1 at 14; Doc. 70-2 at 223-24; see Doc. 70-2 at 261]. Specifically, Plaintiff requested that the NGE "be given a place of congregation." [Doc. 70-2 at 224]. Plaintiff explained that the NGE believe that "[b]lack people are the original people of the planet Earth." [Id.]. On the form, Plaintiff was asked to state: "the practices that are essential to your religion and the materials/items that are essential to those practices, and, identify for each the religious authority, law or teaching that mandates or encourages the practice or item" and directed to "[u]se additional pages if necessary." [Id.]. In response, Plaintiff stated that the "fundamental lessons" of NGE are found in "Life 120°." [Id.].

By letter dated August 10, 2018, Defendant Brown denied Plaintiff's request. [Id. at 264; Doc. 1 at 14]. In denying Plaintiff's request, Defendant Brown advised Plaintiff that the NCDPS considers the NGE to be an SRG and that the Committee, therefore, could not support Plaintiff's request. [Id. at 263]. Defendant Brown also advised Plaintiff that AMCI would accommodate Plaintiff's faith through publications Plaintiff may purchase, but that "any books ordered must be preapproved and within the publication policy guidelines." [Id. at 264].

On January 15, 2019, after learning more information from Chaplain Griffin, Plaintiff filed a second, similar request, which he characterized as a revision to his June 2018 request.  [Doc. 1 at 14; Doc. 70-2 at 259].  On January 30, 2019, Defendant Brown denied this request for the same reasons as his first and repeated that the facility would accommodate Plaintiff's faith, but that "any books ordered must be preapproved and within the publication policy guidelines."   [Doc. 1 at 14; see Docs. 70-2 at 263].

A Religious Services Coordinator met with Plaintiff on February 4, 2019, to review Defendant Brown's denial.  Plaintiff was reminded that he was "not allowed to worship what the state considers a security risk group." [Doc. 70-2 at 280].  Nonetheless, Plaintiff asserts that the NGE has always been a positive factor in his life.  [Doc. 138-4 at ¶ 8].  Despite the harsh conditions of prison, he still has his "right mind."  [Id.].  Without his lessons and ability to congregate with other NGE, however, Plaintiff forgot many of his lessons and was stagnated.   [Id. at ¶ 10; Doc. 138-5 at 44].  Plaintiff's SRG status destroyed many of his relationships with people in society because they "moved on." [Doc. 138-5 at 44].  If not for the ban on the NGE, Plaintiff would have obtained a college degree while incarcerated.  [Id. at 3].

Due to Plaintiff's efforts, however, the NCDPS now recognizes the NGE as a religion.  [Id.].  On February 7, 2022, Plaintiff submitted another

DC-572, again asking that the NGE be allowed to practice in North Carolina prisons. [Doc. 138-9 at 1-5]. On April 20, 2022, Acting Chaplaincy Services Director Susan Addams responded to Plaintiff's request, advising him that the NCDPS "[was] taking into serious consideration the request for the Nations of Gods and Earths to be recognized as a faith group" and that "[the] matter is currently under review." [Doc. 138-12 at 1]. On April 25, 2022, Plaintiff was advised in response to a related grievance that, "[a]s of 3/24/22, Five Percenters have been removed from the SRG list and are no longer recognized as a Security Risk Group." [Doc. 138-10].[16] On August 1, 2022, the NCDPS issued a policy recognizing NGE as a faith group allowed to practice in North Carolina prisons. [Doc. 128-1 at 2-8].

## IV. DISCUSSION

### A. RLUIPA

The RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental

---

[16] This occurred after this Court originally granted summary judgment in this matter, but before the Court of Appeals reversed that judgment.

interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).

"The protections of § 2000cc-1(a) apply whenever a 'substantial burden is imposed in a program or activity that receives Federal financial assistance.'"  Rendleman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) (quoting 42 U.S.C. § 2000c-1(b)(1), (2)).  When bringing a RLUIPA claim, "plaintiffs may not pursue claims for money damages against state officials, and instead are limited to equitable relief."  Gentry v. Robinson, 837 Fed. App'x 952, 957 (4th Cir. 2020) (citing Sossamon v. Texas, 563 U.S. 277, 285-86 (2011) (holding damages unavailable for official capacity claims); Rendleman, 569 F.3d at 184 (same for individual capacity claims); Wall v. Wade, 741 F.3d 492, 496 n. 5 (4th Cir. 2014)).  Moreover, injunctive relief cannot be awarded against government officials in their individual capacities.  Kirby v. City of Elizabeth City, North Carolina, 388 F.3d 440, 452 n.10 (4th Cir. 2004).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his sincerely held religious beliefs.  See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).  "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between

22

abandoning his religion or following his beliefs and losing some government benefit." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (citing Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006)). Once the inmate makes the prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009). An official capacity claim under the RLUIPA is made out when a state official is responsible for a challenged policy whose text violates RLUIPA. Lovelace, 472 F.3d at 193.

Here, the forecast of evidence does not support an official capacity claim under the RLUIPA. Plaintiff offers only a bare and unsupported assertion that "[e]ach of the defendants are in policy making roles part and partial [*sic*] to policy over the SRG." [Doc. 138-2 at 17]. The forecast of evidence is silent on whether Defendant Lassiter issued the applicable Security Manual Policy governing SRG validation. Even if he did, Plaintiff does not take issue with any "policy over the SRG" or even his initial classification as SRG. Rather, Plaintiff complains that Defendant Rich failed to conduct annual reviews of the NGE's SRG status pursuant to the Security Manual Policy. In this regard, the forecast of evidence shows that Defendant Rich was not even employed by the NCDPS in a position (SRG Coordinator)

23

to review such matters until around the time Plaintiff filed this action[17] and that the NGE had been deemed an SRG by the NCDPS since 1998. As such, the forecast of evidence does not support an official capacity RLUIPA claim against Defendant Rich or Defendant Lassiter relative to any NCDPS SRG policy.

The forecast of evidence also includes a copy of the Religious Practices Manual, which is signed by Defendants Lassiter, Cobb, and Brown and was issued <u>after</u> Plaintiff filed his Complaint in this matter. This Manual does not include NGE as a recognized faith group. Even if this Policy were effective when the events at issue occurred, Plaintiff does not take issue with the policy itself, but with Defendant Brown's "rubber-stamp denial" of Plaintiff's two requests that the NGE be allowed to practice in the NCDPS. There is no forecast of evidence, however, that Brown had authority to override the validation of an SRG and recognize such SRG as a religion or faith group for NCDPS purposes. Moreover, the forecast of evidence shows that these denials were based on the NGE's previously established status as an SRG, and that neither Brown nor Lassiter (nor Ishee, Moose, or Cobb

---

[17] Defendant Rich was employed in various other positions within the NCDPS from 2004 to 2008 and 2014 forward, but he was a Criminal Analyst until shortly before Plaintiff brought this claim. [Doc. 70-1 at 5].

for that matter) were responsible for the designation of SRGs or their subsequent review.18

Accordingly, there is no forecast of evidence from which a jury may find that any Defendant issued or was otherwise responsible for a challenged policy in this action such that Plaintiff could prevail on an official capacity RLUIPA claim. As such, because there is no cause of action under the RLUIPA for money damages and because there is no forecast of evidence supporting an official capacity claim against any Defendant under the RLUIPA, the Court will grant summary judgment for Defendants on Plaintiff's RLUIPA claim.[19]

Additionally, as with Defendants' original summary judgment motion, there is no forecast of evidence that AMCI or the NCDPS receive federal financial assistance. In remanding this case, the Fourth Circuit disregarded this deficiency. Despite the parties having been given the opportunity to

---

[18] Even if Brown, in her chaplaincy position, had found NGE to be a religion, this would not preclude NGE still being deemed an SRG, as the criteria are entirely different.

[19] As Defendants argue, there is no forecast of evidence that Defendants acted intentionally with respect to the challenged conduct. [See Doc. 128 at 12]. While Lovelace held that individual liability under the RLUIPA only exists when the plaintiff proves the state official acted with the requisite intent, 472 F.3d at 194, this was before Rendelman, which clarified that RLUIPA does not support an individual capacity damages claim, 569 F.3d at 189. To the extent RLUIPA allows any relief against state officials acting in their individual capacity, the Court would nonetheless grant summary judgment for Defendants on such a claim because there is no forecast of evidence satisfying the intent element as to any Defendant.

refashion and supplement their summary judgment responses, Plaintiff has presented no forecast of evidence showing this element of his RLUIPA claim. The lack of forecast of evidence of this element, therefore, is an additional ground for summary judgment for Defendants.

## B.    First Amendment

In addition to his RLUIPA claim, Plaintiff brings a § 1983 action asserting that his First Amendment right to freedom of religion has been violated.  Defendants argue that this claim is unsupported by the forecast of evidence, that they are entitled to qualified immunity, and that the Eleventh Amendment bars claims for money damages against Defendants in their official capacities.

### 1.    Defendants Lassiter, Moose, Ishee, and Cobb

The Free Exercise Clause of the First Amendment states that "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. CONST. amend. I.  The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment.  See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947).  To sustain a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief.  Hernandez v. Comm'r, 490 U.S. 680, 699 (1989).  The

"substantial burden" standard under the First Amendment and the RLUIPA are the same.  See Lovelace, 472 F.3d at 198 n.8.  If that threshold showing is made, the prisoner must then show that the practice or regulation is not "reasonably related to legitimate penological interests."[20] Id. (quoting Turner, 482 U.S. at 89).

Here, the forecast of evidence shows that Defendants Lassiter, Moose, Ishee, and Cobb were not responsible for the designation of SRGs at any relevant time.  Moreover, the forecast of evidence does not show that these Defendants were involved in Plaintiff's requests to practice as a Five Percenter in the NCDPS.  While Plaintiff alleges in his verified Complaint that Defendant Lassiter "den[ied] [his] culture" and failed "to be consistent in upholding policy in each case of approving [NGE] material," Plaintiff states no basis of knowledge of Defendant Lassiter's actions or inaction.  As such, this is inadmissible conjecture.  There is no forecast that Defendant Lassiter participated in any action or course of conduct that burdened Plaintiff's religious practice.  Moreover, failing to uniformly apply a prison policy without more is not a constitutional violation.  In addition, Plaintiff does not even

---

[20] While a suit under the First Amendment requires a showing of "conscious or intentional interference" with the plaintiff's rights, Wall, 741 F.3d at 499 n. 11 (quoting Lovelace, 472 F.3d at 194-95, 201-02), Defendants did not argue the lack of intent relative to Plaintiff's First Amendment claim.  Therefore, such defense is not before the Court.

make such conjectural assertions regarding Defendants Moose, Ishee, and Cobb.

As such, because there is no forecast of evidence from which a reasonable jury could find that Defendants Lassiter, Moose, Ishee, or Cobb violated Plaintiff's rights under the First Amendment, the Court will grant summary judgment for these Defendants.

### 2. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Qualified immunity, however, may only be invoked by government officials sued in their individual capacities for civil damages. Ridpath v. Bd. of Governors Marshall University, 447 F.3d 292, 306 (4th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)).

"To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). Even where an officer commits a constitutional violation, that officer is still entitled to qualified immunity if, in light of clearly established law, the officer could reasonably believe his actions were lawful. Henry, 652 F.3d at 531.

The law is "clearly established" for qualified immunity purposes by decisions of the U.S. Supreme Court, Fourth Circuit Court of Appeals, or the highest court of the state where the case arose. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). This inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). For defendants to be entitled to qualified immunity, they must not have been on notice that their conduct violated established law. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002). This does not mean "the very action in question [had] previously [been] held unlawful." Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 910 (4th Cir. 2016). Rather, the unlawfulness of

the action must have been apparent "in light of pre-existing law."  Anderson
v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).  "In determining
whether the specific right allegedly violated was 'clearly established,' the
proper focus is not upon the right at its most general or abstract level, but at
the level of its application to the specific conduct being challenged."  Wiley
v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (quoting Pritchett v. Alford, 973
F.2d 307, 312 (4th Cir. 1992) (citations omitted)).  "If there is a 'legitimate
question' as to whether an official's conduct constitutes a constitutional
violation, the official is entitled to qualified immunity."  Id. (quoting Tarantino
v. Baker, 825 F.2d 772, 775 (4th Cir. 1987), cert. denied, 489 U.S. 1010
(1989)).  "As the qualified immunity defense has evolved, it provides ample
protection to all but the plainly incompetent or those who knowingly violate
the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Therefore, the question is whether the right of prisoners to practice as
members of the NGE and not as a result be validated as SRG was "clearly
established" at the relevant times.  See Saucier v. Katz, 533 U.S. 194, 201,
121 S.Ct. 2151, 2156 (2001).  The fact that the Defendants no longer dispute
that the NGE is afforded First Amendment protections does not indicate that
such was theretofore "clearly established".  In fact, in its decision remanding
this case, the Fourth Circuit did not decide that the NGE is a religion.  Rather,

it held "that there may at least be an open factual question about whether NGE qualifies as a religion for RLUIPA and First Amendment purposes[.]" Greene, 2023 WL 8618519, at *1.[21]  As such, whatever Defendant Rich's and Defendant Brown's actions may or may not have been are not relevant in answering this question of law.

Defendants also argue that there is no clearly established right of prisoners not to be classified as SRG based on adherence to NGE or to have NGE recognized as a religion with corporate services. [Doc. 128 at 8 (citing Rogers v. N. Carolina Dep't of Pub. Safety, 2022 WL 3283990; Rogers v. Jackson, No. 5:15-CT-3092-FL, 2017 WL 4246866 (E.D.N.C. Sept. 27, 2017); and Incumaa v. Stirling, 791 F.3d 517 (4th Cir. 2015))].  Defendants also contend that, in Rogers v. N. Carolina Dep't of Pub. Safety, Defendants Brown and Rich "have been directly found not to have violated offenders' rights on these exact same issues."  [Doc. 128 at 9].  In that regard, Defendants argue that Plaintiff "cannot plow new ground and simultaneously claim a right to be clearly established."  [Id.].

---

[21] This Court, however, will treat as an undisputed fact that NGE is a religion for purposes of this Order, but will do so because of Defendants' concession, not because of any law of the case.

The forecast of evidence in the light most favorable to the Plaintiff shows that he was first validated as an SRG member in 1998 and that he remained so validated until the Spring of 2022 when the NGE was no longer recognized as an SRG in the NCDPS.  In 1999, the Fourth Circuit considered whether the South Carolina Department of Corrections' (SCDC) classification of Five Percenters as an STG,[22] resulting in their placement in long-term segregation or maximum custody confinement, violated these prisoners' First Amendment free exercise rights.  In re Long Term Segregation of Inmates Designated as Five Percenters, 174 F.3d 464 (4th Cir. 1999), cert. denied 120 S.Ct. 179 (1999).[23]  The SCDC classified Five Percenters as an STG and then, acting pursuant to STG policy, transferred all Five Percenters to administrative segregation or maximum custody confinement.  Id. at 466.  The Court of Appeals, as well as the district court, merely assumed NGE to be a religious group entitled to First Amendment protection. That issue was not decided by the Court.  The Fourth Circuit affirmed summary judgment for the defendants by concluding based on the

_____

[22] Apparently South Carolina uses the term Security Threat Group (STG) rather than Security Risk Group (SRG).  There is nothing in the record to indicate that there is a difference between these terms.

[23] This case pre-dates the adoption of RLUIPA.  PL. 106-274, § 2, Sept. 22, 2000, 114 Stat. 803.

record before it that the SCDC's decision to designate the Five Percenters as an STG was rationally related to the legitimate end of prison safety and security.  Id. at 468, 471.  The standards are entirely different for determining whether a group is a religious group and whether it is an STG (or SRG).

Since In re Long Term Segregation, there have been no precedential First Amendment decisions and only two noteworthy RLUIPA decisions issuing from the Fourth Circuit. In Incumaa, the prisoner plaintiff was placed in solitary confinement in the SCDC after being designated a Five Percenter for participating in a 1995 prison riot with other Five Percenters.  791 F.3d at 519.  Incumaa remained in solitary confinement for 20 years despite not committing a single disciplinary infraction during that time.  Id.  Incumaa brought a RLUIPA claim, alleging that SCDC policy required him to renounce his affiliation with the NGE, which he claimed to be a religion, before releasing him from solitary confinement.  Once again, the issue of whether NGE constitutes a religion was not an issue before the Court.  The Fourth Circuit upheld the district court's dismissal of the claim because renunciation of his affiliation was only one of three avenues for an NGE-adherent STG member like Incumaa to be released to the general population from security detention.  Id. at 525-26.  As such, Incumaa failed to establish that the SCDC policy imposed a substantial burden on his NGE adherence because "no

reasonable factfinder could conclude that [the plaintiff's] renunciation of his faith is a prerequisite to returning to the general population."  Id. at 526.  In reaching this decision, the Fourth Circuit "observed that a federal intelligence summary concluded the Five Percenters were 'a radical Islamic sect/criminal group that is often boldly racist in its views, prolific in its criminal activities, and operates behind a façade of cultural and religious rhetoric.'"  Incumaa, 791 F.3d at 520 n. 3 (quoting In re Long Term Segregation, 174 F.3d at 467).

Two years later, in an unpublished 2017 decision, the Fourth Circuit reviewed a decision by the Eastern District of North Carolina dismissing the prisoner plaintiff's RLUIPA claim on summary judgment.  Miles v. Guice, 688 Fed. App'x 177 (4th Cir. 2017).[24]  Again, without deciding the issue of whether NGE is a religion, the Eastern District concluded *inter alia* that the forecast of evidence did not show that the challenged policies – that is, the refusal to accommodate fasting on four NGE holy days, the limitation on possessing NGE texts, the prohibition on possessing an NGE medallion or flag, and the unavailability of a vegan diet – substantially burdened Miles' practice of NGE.  Miles v. Guice, No. 5:13-CT-3193-FL, 2016 WL 534 9743 (E.D.N.C. Sept. 23, 2016).  The Eastern District, therefore, concluded that

---

[24] Defendant Betty Brown and Defendant Rich's predecessor, Larry Dunston, were defendants in Miles.

Miles was unable to establish a RLUIPA or First Amendment violation.  Id. at

*11.  Plaintiff appealed the dismissal of the RLUIPA but not the First

Amendment claim.  Miles, 688 Fed. App'x at 178.  On appeal, the Fourth

Circuit held that "[n]either the lack of access to a vegan diet nor to the NGE

texts, which were not subject to a blanket ban, are substantial burdens."  Id.

at 179 (internal citation omitted).  "Failing to accommodate fasting on holy

days, however, is a substantial burden."  Id. (citing Lovelace, 472 F.3d at

187).  Because the Eastern District did not apply strict scrutiny to the NGE

fasting policy and because the record did not sufficiently answer the

question, the Fourth Circuit vacated the grant of summary judgment on the

fasting claim and remanded it for consideration under strict scrutiny.[25]  Id.

Ultimately, Miles was resolved through settlement on January 8, 2020.  [Doc.

70-1 at 9].

---

[25] On remand, the Eastern District noted that "for purposes of the instant analysis, … the Fourth Circuit has held that not being able to fast on NGE holy days constitutes a substantial burden on a religion."  Miles v. Guice, No. 5:13-CT-3193-FL, 2018 WL 505071, at *5 (E.D.N.C. Jan. 22, 2018).  The Court denied Defendants' motion for summary judgment on this issue, concluding that defendants "[had] not demonstrated that NCDPS's policy, refusing to recognize any aspect of NGE as a religion, and thus refusing to accommodate plaintiff's fasting on NGE holy days, is the least restrictive means of furthering a compelling government interest."  Id. at *6.  To the extent that Miles can be argued to support Plaintiff's claim, it is noted that the Court of Appeals decision was unpublished and therefore without precedential value, and the district court decisions are neither binding on this Court nor a basis for concluding any right to be clearly established.

Plaintiff relies heavily on <u>Miles</u> to challenge qualified immunity, noting that in that case the Court "gave a favorable decision for the NGE."[26] [Doc. 138-2 at 15]. He further argues that "[t]here is a clearly established right for the plaintiff not to get declared [an SRG] as [an] NGE member especially when there is no proof of violence from the group … [and] no reviews of the NGE were given from the 25 year validation[.]" [Doc. 138-2 at 15-16]. That, however, is not the holding of the case. The Court merely required the district court to apply a different standard of scrutiny to the only surviving aspect of the plaintiff's RLUIPA claim.

Plaintiff also relies on <u>Coward</u>. In that case the VDOC conducted a survey of the NGE policies of correctional institutions across the country in response to a prisoner's NGE-based First Amendment and RLUIPA lawsuit. <u>Coward</u>, 276 F.Supp.3d at 566. Of the thirty-three states that responded, thirteen did not recognize NGE as a religion. These included, *inter alia*, the six Fourth Circuit jurisdictions in North Carolina, South Carolina, and West Virginia. Fifteen states voluntarily recognized NGE as a religion and NGE had obtained religious status through lawsuits filed in eight states. <u>Id.</u> at 563.

---

[26] Plaintiff also cites "Fuller v. Hooks 5:19-ct-3317-BO (EdNC)." [Doc. 138-2 at 15 (error uncorrected)]. However, the Complaint assigned to that case number, <u>Fuller v. Thomas</u>, 5:19-ct-03317-M (E.D.N.C.), was dismissed on initial review. [Case No. 5:19-ct-3317, Doc. 13].

While noting that "[n]umerous courts in the Fourth Circuit have addressed RLUIPA claims by NGE adherents and found that the NGE is not a religion and/or that the VDOC's policies toward the NGE represent the least restrictive means for addressing a compelling government interest," the District Court for the Eastern District of Virginia concluded on the record before it that the plaintiff's First Amendment and RLUIPA rights were violated by the VDOC's designation of the NGE as an STG, "thereby enforcing a zero tolerance policy" for NGE activity. Id. at 575.  The District Court ordered the VDOC to remove the STG designation and recognize NGE as a religion, affording it rights and privileges as other religions.  Id.  Nonetheless, Coward issued from a district court in another jurisdiction and thus did not clearly establish any right for qualified immunity purposes.

Moreover, as noted, in 2022, the United States District Court for the Middle District of North Carolina dismissed a lawsuit against Defendants Brown and Rich which raised First Amendment and RLUIPA claims and involved issues substantially similar to those here.   See Rogers v. N. Carolina Dep't Pub. Safety, 2022 WL 3283990, report and recommendation adopted, 2022 WL 4472958.  As such, absent an intervening and binding contrary decision, of which there is none, the Plaintiff cannot show that his rights were clearly established.  As  such the Defendants could reasonably

believe their actions were lawful and thus are entitled to qualified immunity. See Hope, 536 U.S. at 741; Henry, 652 F.3d at 531.

While the NGE has now been recognized in some instances as a religion, and not an SRG, neither the Fourth Circuit nor the Supreme Court has clearly established the constitutional right of Five Percenters to practice the NGE in prison. On the contrary, the Fourth Circuit has generally declined to consider whether the NGE is a religion and has frequently affirmed the denial of prisoner claims brought under the more protective RLUIPA.[27]  Even in this case the Court of Appeals did not hold that NGE is a religion, but only held that on the record before it that there was a genuine issue of fact as to whether it was.  Moreover, while prison policies that violate a prisoner's First Amendment religious free exercise rights necessarily violate the RLUIPA,

---

[27] See, e.g., Versatile v. Johnson, No. 3:0CV120, 2011 WL 5119259 (E.D. Va. Oct. 27, 2011) (adopting Magistrate Judge's recommendation that Plaintiff's motion for injunctive relief be denied because he had not established that NGE is a "religion" and not merely a "way of life" such that it triggers RLUIPA protections and dismissing the case with prejudice), affirmed, 474 Fed. App'x 385 (4th Cir. 2012) (per curiam), cert. denied, 133 S.Ct. 1261 (2013); Allah v. Virginia, No. 2:12CV00033, 2014 WL 1669331 (W.D. Va. Apr. 28, 2014) (despite assuming that the NGE is a religion under the RLUIPA, that Plaintiff's beliefs were sincerely held, and that the VDOC policy banning NGE materials substantially burdened Plaintiff's religious exercise, the district court found that the VDOC's policies were the least restrictive means of furthering compelling interest of prison safety), affirmed, 601 Fed. App'x 201 (4th Cir. 2015) (affirming "on the cogent reasoning spelled out in the well-crafted Opinion of the district court"), cert. denied, 136 S.Ct. 255 (2015); Rogers v. Jackson, No. 5:15-CT-3092, 2017 WL 4246866 (E.D.N.C. Sept. 25, 2017) (assuming that Five Percenters are a religious group and, based in part on an Affidavit by non-party Betty Brown, finding defendants had shown that the prohibition on Five Percenters and their designation as an STG were the least restrictive means of serving the compelling state interest of inmate safety).

the converse is not true. That is because a prison regulation or policy that fails strict scrutiny may very well satisfy rational basis review. As such, cases involving RLUIPA claims do not portend or "clearly establish" rights under the First Amendment.

For these reasons, the challenged actions of denying Plaintiff's requests to practice as a Five Percenter and continuing to designate the NGE as an SRG were not objectively unreasonable under the state of the law at the time and Defendants could have reasonably believed their actions were lawful. Defendants Brown and Rich are, therefore, entitled to qualified immunity on Plaintiff's First Amendment claim for damages. The Court, therefore, will grant also Defendants' motion on this ground.

## V. CONCLUSION

For these reasons, the Court will grant Defendants' renewed motion for summary judgment and dismiss this action.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' (Renewed) Motion for Summary Judgment [Doc. 127] is **GRANTED**, and this action is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Surreplies [Docs. 144, 145] are **STRICKEN** from the record in this matter.

39

**IT IS SO ORDERED**.

Signed: January 27, 2025

Martin Reidinger
Chief United States District Judge